

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00303-CV

SDB & ASSOCIATES, INC. D/B/A BOATRIGHT HARDWOOD FLOORS
AND SAMUEL BOATRIGHT, APPELLANTS

V.

N.V. METRO IV, LTD, APPELLEES

On Appeal from the County Court at Law No. 2
Travis County, Texas
Trial Court No. C-1-CV-19-001794, Honorable Eric M. Shepperd, Presiding

May 4, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

The issue in this appeal can be likened to a game of horseshoes. The answer depends upon who came closest to the stake. The lease agreement executed between N.V. Metro IV, Ltd (Metro), SDB & Associates, Inc. d/b/a Boatright Hardwood Floors, and Samuel Boatright (SDB) describes the stake. It pertains to awarding attorney's fees to the "prevailing party" in a lease dispute. They happened to define "prevailing party" as meaning "the party who has most nearly obtained the outcome sought by such party in connection with any particular claim." Like in a game of horseshoes, the winner (i.e.,

"prevailing party") is the contestant that came closest (i.e., "most nearly obtained") to the stake (i.e., "the outcome sought in connection with any particular claim").

SDB was the tenant who breached the lease and suffered a judgment being entered in favor of its landlord, Metro, for $92,717.68.[1]  Nevertheless, it believed itself to be the prevailing party because Metro recovered a sum less than it wanted but relatively equal to the amount SDB said it owed.  In other words, SDB came closest to the stake or outcome it allegedly sought.  Yet, the trial court denied that request for fees and, instead, awarded them solely to Metro.  Whether the decision comported with the terms of the lease is the only issue before us, and we affirm.

The court in *Saltworks Ventures, Inc. v. Residences at The Spoke, LLC*, No. 03-16-00711-CV, 2018 Tex. App. LEXIS 3463 (Tex. App.—Austin May 17, 2018, no pet.) (mem. op.), described the standard of review utilized by the Third Court of Appeals to resolve disputes about attorney's fees.[2]  As it said, "[t]he right to recover these fees is a question of law reviewed de novo, but the calculation of any award is reviewed only for abuse of discretion."  *Id.* at *35.  And, though statute generally allows the "prevailing party" in a contract dispute to recover fees, parties to the agreement are free to negotiate other terms.  *Id.*  That is, they are free "to contract for a fee-recovery standard either looser or stricter than" that provided by chapter 38 of the Texas Civil Practice and Remedies Code. *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015) (allowing one to recover reasonable attorney's fees if the claim is for an oral or written contract).  More importantly,

---

[1] Boatright guaranteed SDB's performance.

[2] Because this appeal was transferred from the Third Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

none of the litigants at bar question that their contractual provision relating to attorney's fees controls the outcome. Nor do either suggest that the verbiage of that provision is ambiguous. That said, we turn to the dispute at hand.

SDB's horseshoe purportedly came closest to the stake because 1) at trial, it denied owing nothing, 2) at trial, it admitted to owing SDB $92,000 for breaching the lease, and 3) the trial court awarded Metro about $700 more than SDB admitted owing. Yet, the tenant initially pled in its answer to the petition that Metro's claims were "barred in whole or in part by its failure to mitigate its damages, if any." So too did it seek a dismissal via its request for death penalty sanctions levied against its landlord urged orally on the day of trial and in writing post-trial.[3] This indicates SDB sought more than one outcome. They ranged from escaping liability *in toto* to paying no more than $92,000.

On the other hand and as evinced by its live pleading, Metro sought damages. To that end, it averred in its live pleading that the "total amount now due and owing by Defendant Tenant . [was] no less than $171,634.83." And, more was sought at trial, as illustrated by Metro's effort to prove that a bit under $335,000 was "due through October 10, 2019." When Metro so attempted, SDB objected because the lessor had not pled for damages incurred beyond October of 2018. The trial court sustained the objection. So too did the court later comment after hearing the admission: "As I understand it, gentlemen, we are going with 92,717.68." These circumstances indicate one outcome sought by Metro. That outcome being the recovery of damages, though the amount wanted differed from the amount given.

---

[3] The oral motion was denied before trial, while the trial court implicitly denied the written motion through its judgment denying the parties all relief not otherwise granted. Dismissal as a sanction was not otherwise granted.

As we have said before, "parties to the contract are considered masters of their choices." *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.). They select the words to include in the document and strike the deal they choose to strike. *Id.* Consequently, the contract binds them as it is written. *Id.* The words selected at bar speak of awarding fees to the party who "most nearly obtained the outcome sought by such party in connection with any particular claim." The phrase "most nearly obtained the outcome sought" may seem to be clear language formulating an easy equation to apply. But, gray surrounds its application, especially when a litigant pursues multiple outcomes or aims at different stakes. Much then depends on the perspective taken by the judge when measuring who came closest to the stake at which the party aimed. For instance, If SDB merely sought to admit liability and restrict damages to around $92,000, then it could be said it "most nearly obtained the outcome sought." Yet, it did not so limit its aim. Instead, the lessee sought more by attempting to avoid all liability through invoking an affirmative defense and pursuing dismissal as a sanction; from that perspective, SDB's being assessed a substantial sum as damages is far distant from the particular stake at which it aimed. And, most importantly, the words of the lease provision in play does not dictate which of the multiple outcomes sought by SDB should direct the trial court's perspective.

In turn, one could view the outcome sought by the landlord as being the award of damages. Though the sum desired may have been less than that awarded, it nonetheless is substantial and achieves the outcome sought, that being an award of damages. Furthermore, viewing matters from this perspective falls within the language selected by the parties. And, this may well be the perspective utilized by the trial court. It is the one we utilize here, especially since SDB initially denied liability while pursuing dismissal of

4

the suit prior to and after trial. In short, neither party pitched a ringer, and, even if we were to say that SDB came close, then, under the terms of the agreement, the outcome of trial was a leaner for Metro.

Consequently, we overrule SDB's first issue regarding the propriety of the decision awarding Metro its fees. And, our so concluding relieves us from addressing SDB's second issue involving purported error in denying fees to the tenant. We affirm the judgment of the trial court.


Brian Quinn
Chief Justice